IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Renee James,

               Plaintiff,        Case No. 1:18-cv-02074

v.                                 Michael L. Brown
                                  United States District Judge

Variety Wholesalers, Inc., d/b/a
Roses Stores,

               Defendant.

_____/

**ORDER**

Defendant Variety Wholesalers, Inc., moves for summary judgment on Plaintiff Renee James's claim for damages related to a slip-and-fall at one of its stores. (Dkt. 31.) The Court grants Defendant's motion.

**I.    Factual Background**

Plaintiff Renee James alleges, on the evening of May 7, 2016, she slipped and fell on a yellow liquid — believed to be Hawaiian Punch — while shopping in one of Defendant's stores. (Dkts. 31-1 ¶¶ 1, 3; 42 ¶¶ 1, 3.) Plaintiff was familiar with this particular store location, having

shopped there fifteen to twenty times each month for many years. (Dkts. 31-1 ¶ 2; 42 ¶ 2.)

On this particular night, Plaintiff's son drove her and two of her granddaughters to the store. (Dkts. 31-1 ¶ 4; 42 ¶ 4.) According to Plaintiff's son, he and his mother went to the clothing department and then the snack department. (Dkts. 31-1 ¶ 27; 42 ¶ 27.) He explained that, before her fall, he and his mother walked down the aisle where she fell. (Dkts. 31-1 ¶ 30; 42 ¶ 30.) As they were heading to the cash registers, Plaintiff saw something that caught her eye and stopped walking. (Dkts. 31-1 ¶ 6; 42 ¶ 6.) To catch up with her family, Plaintiff cut through the beverage aisle. (Dkts. 31-1 ¶ 9; 42 ¶ 9.) As she was walking toward her family, she slipped on yellow Hawaiian Punch and fell. (Dkts. 31-1 ¶ 13; 42 ¶ 13.)

Plaintiff's son took photographs of the scene with his cellphone, which are incorporated as part of the record. (Dkts. 31-1 ¶¶ 19–21; 31-3; 31-4; 42 ¶¶ 19–21.) He was about six to seven feet away from his mother when she fell and could see the Hawaiian Punch on the floor as she walked into it. (Dkts. 31-1 ¶ 32; 42 ¶ 32.)

Plaintiff knows of no one who saw her fall other than her family members. (Dkts. 31-1 ¶ 8; 42 ¶ 8.) She had taken at least three steps in a straight direction before falling. (Dkts. 31-1 ¶ 10; 42 ¶ 10.) No one called out to her or distracted her. (Dkts. 31-1 ¶ 11; 42 ¶ 11.) Nothing obstructed her view, and the area was well-lit. (Dkts. 31-1 ¶¶ 12, 17; 42 ¶¶ 12, 17.)

Neither Plaintiff nor her son know how the Hawaiian Punch got on the floor or how long it had been there. (Dkts. 31-1 ¶¶ 14–15, 33–34; 42 ¶ 14–15, 33–34.) Plaintiff admits she did not look at the floor as she walked down the aisle. (Dkts. 31-1 ¶ 18; 42 ¶ 18.) She also admits that, had she done so, she would have seen the spill. (Dkts. 31-1 ¶ 23; 42 ¶ 23.)

On the night of the incident, Nijila Smith was on duty as the assistant manager, with Xavier Mills and Norman George working as stockers. (Dkts. 31-1 ¶ 39; 42 ¶ 39.) None of the employees saw Plaintiff fall or were in the area at the time. (Dkts. 31-1 ¶¶ 25, 40; 42 ¶¶ 25, 40.)[1]

---

[1] Plaintiff claims that she "lacks information sufficient to admit or deny this allegation" but otherwise presents nothing to dispute these facts. (Dkt. 42 ¶¶ 39–40.) "The response that a party has insufficient knowledge to admit or deny is not an acceptable response" and so the Court accepts these facts as admitted. *See* LR 56.1(B)(2)(a)(4), NDGa.

Defendant maintains a policy and practice of having employees do sweeps of its stores to look for spills, foreign objects, or safety hazards. (Dkts. 31-1 ¶ 41; 42 ¶ 41.) All employees regularly look for spills and other slip, trip, and fall hazards. If an employee finds a hazard, the employee cleans it up, removes it, or guards it until another associate can help. (Dkts. 31-1 ¶ 41; 42 ¶ 41.) Employees conducted these "safety sweeps" throughout the day and did so on the day of the incident. (Dkts. 31-1 ¶ 41; 42 ¶ 41.) Beyond the continuous safety sweeps, Defendant also uses a "safety calendar" to document safety sweeps by management employees. The safety calendar documents only the manager's inspections, not those done by employees like Mills and George. Employees conducted their own sweeps on top of the safety sweeps by management. (Dkts. 31-1 ¶ 42; 42 ¶ 42.)

Mills and George testified that, on the night of Plaintiff's fall, they followed the policies and procedures for safety sweeps. (Dkts. 31-1 ¶ 43; 42 ¶ 43.) Smith also conducted an inspection. The evidence shows that, less than thirty minutes before Plaintiff fell, at least three employees inspected the area where she fell and found no spills. (Dkts. 31-1 ¶ 44; 42 ¶ 44.) Assistant manager Smith, for instance, testified that she

inspected the area about thirty minutes before Plaintiff fell. (Dkt. 31-9 ¶ 7.) Mills testified that he inspected the area no more than twenty minutes before the fall. (Dkt. 31-8 ¶ 6.) And Associate George testified that he swept the area fifteen minutes before the fall. (Dkt. 31-7 ¶ 4.) All three testified that nothing was on the floor when they inspected it. (Dkts. 31-1 ¶ 45; 42 ¶ 45.) They said that, had there been a spill, they would have seen it and cleaned it up. (Dkt. 31-1 ¶ 44.)

Plaintiff claims that these last several facts about the safety sweeps are "disputed." In support, she cites several lines of testimony from Associate Mills's deposition that he could only personally speak to his own sweeps based on his work schedule. (Dkt. 42 ¶¶ 41–43.) She then cites the entirety of Ms. Smith's deposition testimony and the entirety of Mr. Mills's deposition testimony, arguing that they refused to answer simple questions about sweeps or testified "in a manner inconclusive and inconsistent with [their] declaration[s]." (*Id.* ¶¶ 44–45.) But Plaintiff cites nothing specific within the transcripts to create a genuine dispute of material fact. And general dissatisfaction with how a witness answered questions is not enough.

This is particularly so when Defendant filed, in accordance with the Court's Standing Order, a supplemental statement of facts responding to each of Plaintiff's "disputed" facts with more citations to evidence showing these facts are not in dispute. (*See* Dkt. 43.) The Court considers each of these facts admitted then, as Plaintiff has offered nothing to dispute them. She also declined to file her own statement of disputed material facts that she contends create a genuine issue for trial. *See* LR 56.1B(2) ("This Court will deem each of the movant's facts as admitted unless the respondent . . . directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ."); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("Plaintiff[']s failure to comply with local rule 56.1 is not a mere technicality."); *see also Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir. 2014) (holding that district court properly found defendants' facts admitted under Local Rule 56.1 where plaintiff responded to facts without including citations to evidence of record).

This determination, however, does not discharge Defendant's burden at summary judgment. The Court must still review the evidence to determine whether, based on the undisputed facts, Defendant is

entitled to judgment as a matter of law. *Mann*, 588 F.3d at 1303 (citing *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008)).

## II.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact that a jury should decide at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the

nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no genuine dispute for trial when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

8

### III. Discussion

#### A.     Plaintiff's Motion to Strike (Dkt. 41)

Plaintiff moves to strike the declaration and testimony of Norman George, a former employee at the store who was working on the evening of Plaintiff's fall.  (Dkt. 41.)  In support of its motion for summary judgment, Defendant relies in part on that declaration. (Dkt. 31-7.) The Court denies Plaintiff's request to strike.

Plaintiff now claims that "[d]espite repeated requests, Defendant failed to produce the Witness" until three days before the end of discovery.  (Dkt. 41 at 1.)  But Plaintiff never noticed Mr. George for deposition, moved to compel his testimony, sought to use the Court's discovery dispute procedure in its Standing Order, notified the Court of any issue, or sought another extension of discovery to take his deposition. (*See* Dkt. 18 at 3 (explaining procedure for requesting a conference or an extension).)  This is the first the Court is hearing of this issue.  Plaintiff contends that Defendant purposefully withheld the witness.  But Mr. George was not a surprise witness whose identity was kept hidden from Plaintiff.   To the contrary, Defendant disclosed Norman George to

9

Plaintiff in its responses to interrogatories early in discovery. (Dkt. 45 at 1.)

Plaintiff cannot deliberately avoid using any or all of these possible avenues to obtain a witness's testimony but then later move to strike in the hopes the Court will prevent Defendant from using testimony. A litigant cannot sit on his or her hands and then claim foul. The Court finds Plaintiff's motion without merit and declines to strike Norman George's testimony.

### B.  Defendant's Motion for Summary Judgment (Dkt. 31)

In *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997), the Georgia Supreme Court reviewed years of Georgia case law from slip and fall premises liability appeals. This review addressed what the court described as a "pendulum-like" swing back and forth in Georgia law between cases accenting an owner's obligation to keep its premises safe and those accenting an invitee's obligations to exercise due care for his or her own safety. *Id.* at 405. The Georgia Supreme Court ultimately "reaffirmed" that, to recover for injuries sustained in a slip-and-fall action, an invitee like Plaintiff must prove both "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the

plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."

Neither party contends that Defendant had actual knowledge of the hazard. (Dkt. 40 at 4.) And a review of the record presents nothing to suggest it did. *See Medders v. Kroger Co.*, 572 S.E.2d 386, 387 (Ga. Ct. App. 2002) ("[I]t is undisputed that there were no Kroger employees in the immediate area when [the plaintiff] fell. Therefore, she cannot show that Kroger had actual knowledge of the hazard."). To survive summary judgment then, Plaintiff must point to evidence that Defendant had constructive knowledge of the hazard.

To show constructive knowledge, a plaintiff must present evidence either "that (1) an employee of the proprietor was in the immediate area of the hazard and could have easily seen and removed it; or (2) the hazard had been present long enough that the proprietor could have discovered it through reasonable inspection procedures." *Lomax v. Kroger Co.*, 824 S.E.2d 629, 631 (Ga. Ct. App. 2019); *see also J.H. Harvey Co. v. Reddick*, 522 S.E.2d 749, 751 (Ga. Ct. App. 1999). Under the second method, such constructive knowledge

> may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at

11

> summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident.

*Shepard v. Winn Dixie Stores, Inc.*, 527 S.E.2d 36, 38 (Ga. Ct. App. 1999) (internal quotation marks omitted).

Under Georgia law, however, "[i]t is well settled that a proprietor is under no duty to patrol the premises continuously in the absence of facts showing that the premises are unusually dangerous." *Mazur v. Food Giant, Inc.*, 359 S.E.2d 178, 178 (Ga. Ct. App. 1987); *see also Blake v. Kroger Co.*, 480 S.E.2d 199, 202 (Ga. Ct. App. 1996) ("We know of no case or rule which requires a proprietor or its employees to crawl on the floor at regular intervals to discover and remove every otherwise hidden or invisible hazard."). But regardless of any inspection policy, "when a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, [Georgia courts hold] that the inspection procedure was adequate as a matter of law" and may grant summary judgment to the proprietor. *Medders*, 572 S.E.2d at 388 (quoting *Matthews v. The Varsity*, 546 S.E.2d 878 (Ga. Ct. App. 2001)).

The undisputed evidence shows that Defendant followed its procedures and inspected the area at least three times within thirty

12

minutes before Plaintiff's fall, with Mr. George testifying that he inspected the area a mere fifteen minutes before Plaintiff fell. Under Georgia law, Defendant is entitled to summary judgment based on its lack of constructive knowledge of the hazard. *See Shepard*, 527 S.E.2d at 38 (holding that to obtain summary judgment, defendant must show it had reasonable inspection program in place and carried out the program at time of incident); *cf. Lomax*, 824 S.E.2d at 632 (finding dispute in record where manager testified to the customary "store inspection plan" but discrepancy existed between the store's sweep log and the surveillance footage).

Even if Defendant could not show that it carried out its reasonable inspection plan on the evening at issue, it would still be entitled to summary judgment based on the lack of constructive knowledge. This is because Plaintiff points to no evidence creating a genuine issue of material fact suggesting an employee of Defendant was in the area of the hazard and could have seen it easily or that the hazard had been on the floor for long enough for Defendant to have discovered it with a reasonable inspection.

Again, three employees testified that they separately inspected the area no more than thirty minutes before Plaintiff fell. She offers no admissible evidence to contradict this. The undisputed evidence shows that no employee was in the area after the final inspection but before she fell. Plaintiff also points to no evidence showing how the Hawaiian Punch got on the floor or how long it had been there before her fall. *See Kmart Corp. v. McCollum*, 659 S.E.2d 913, 916 (Ga. Ct. App. 2008) (finding inspection procedure adequate as matter of law when plaintiff could point to no evidence "to show that the liquid had been there long enough that Kmart should have discovered and removed it during a reasonable inspection"). Plaintiff thus presents no evidence to establish Defendant's constructive knowledge of the alleged hazard. *See Ginn v. Grothere*, 469 S.E.2d 876, 878 (Ga. Ct. App. 1996) (explaining that "a defendant can establish lack of actionable constructive knowledge by evidence of compliance with reasonable inspection . . . procedures").

The Court's conclusion is in line with decisions of Georgia courts consistently holding that inspections such as Norman George's, conducted within fifteen minutes before a fall, are reasonable as a matter of law. The testimony of the other two employees that they inspected the

14

area within thirty minutes and twenty minutes of Plaintiff's fall also supports this conclusion. *See, e.g.*, *Walmart Stores East L.P. v. Benson*, 806 S.E.2d 25, 30 (Ga. Ct. App. 2017) (holding adequate as matter of law an inspection of the store aisle conducted less than thirty minutes before a fall); *Brown v. Host/Taco Joint Venture*, 699 S.E.2d 439, 443 (Ga. Ct. App. 2010) (holding adequate as matter of law an inspection procedure conducted every fifteen minutes); *Adamchick v. Cracker Barrel Old Country Store, Inc.*, 637 S.E.2d 44, 46 (Ga. Ct. App. 2006) (holding no constructive knowledge based on inspection of bathroom conducted fifteen minutes before a fall).

The Court thus holds Defendant's multiple inspections of the area shortly before the incident adequate and reasonable as a matter of law. And because the Court finds that Defendant had neither actual nor constructive knowledge of the alleged hazard, Plaintiff's claim under § 51–3–1 must fail.[2] The Court grants Defendant's motion for summary judgment. (Dkt. 31.)

---

[2] Because the Court finds Plaintiff has failed to show that Defendant had actual or constructive knowledge of the hazard, the Court need not decide the second issue of whether Plaintiff exercised ordinary care for her own safety. *See Medders*, 572 S.E.2d at 388 (affirming grant of summary judgment on basis of no actual or constructive knowledge).

15

## IV. Conclusion

The Court **DENIES** Plaintiff Renee James's Motion to Strike Testimony (Dkt. 41).

The Court **GRANTS** Defendant Variety Wholesalers, Inc.'s Motion for Summary Judgment (Dkt. 31) and **DISMISSES** this action.

**SO ORDERED** this 24th day of February, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE